# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| v. | : | |
| TALLI MCFADDEN | : | No. 15-376-03 |

## MEMORANDUM

PRATTER, J.                                                                                           APRIL 28, 2023

Talli McFadden seeks compassionate release from imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A)(i); alternatively, he requests a judicial recommendation to the Attorney General and the Bureau of Prisons ("BOP") to transfer him to home confinement under 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). But neither Mr. McFadden's general concerns about COVID-19 risks nor his concerns about the BOP's COVID-19 mitigation efforts constitute an extraordinary and compelling reason for release, nor do they warrant a judicial recommendation that he be transferred to home confinement. Therefore, the Court denies both requests.

## BACKGROUND

### I.  Mr. McFadden's Criminal Conduct

Mr. McFadden, along with his brother, Tyron McFadden, and other codefendants, operated a large-scale drug trafficking conspiracy from 2009 to 2015. Mr. McFadden helped organize and pay drug and money couriers, including while he was in custody in 2010 for a separate charge. In 2011, Mr. McFadden was involved in a shooting and, upon learning of an active warrant for his arrest, relocated to California, where he continued to facilitate the drug operation. His criminal history includes a broad range of violent and non-violent offenses beginning as a juvenile, along with numerous parole violations.

Mr. McFadden pled guilty to the instant cocaine and marijuana distribution charges. This Court sentenced Mr. McFadden to 210 months' incarceration, 8 years' supervised release, and a $400.00 special assessment. He is currently serving his sentence at United States Penitentiary Coleman I in Florida and has served approximately 87 months.

## II.     Mr. McFadden's Motion

Mr. McFadden filed a prior motion for compassionate release in July 2021, which the Court denied. That motion asserted that the risk posed by COVID-19 variants, coupled with Mr. McFadden's obesity, placed him at significant medical risk warranting release. The Court denied this motion because Mr. McFadden had received a COVID-19 vaccination and because his other medical conditions did not rise to the level of an extraordinary and compelling reason for release.

Mr. McFadden's new motion, filed in February 2023, largely repeats these same points, though it adds two new arguments. First, that Mr. McFadden has contracted COVID-19, which he alleges threatens his health, safety, and life. Second, that the BOP's COVID-19 mitigations efforts amount to a quarantine lock-down that is analogous to solitary confinement punishment. The Government opposes the motion for compassionate release.

## III.    The Bureau of Prisons' Response to the COVID-19 Pandemic

The BOP has taken many measures to "mitigate the spread of COVID-19 in [its] facilities" and to protect the health of inmates. *BOP Modified Operations*, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited April 28, 2023). The BOP permits almost no outside visitors, limits inmate movement within the prison, requires inmates and staff to wear masks, and screens all staff daily for symptoms. If an inmate tests positive, the BOP immediately quarantines that inmate and tests and quarantines all contacts. The BOP has also put thousands of eligible prisoners—the elderly, the terminally ill, and those who have almost finished

their sentences—in home confinement. 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g); Pub. L. No. 116-136 § 12003(b)(2).

The BOP has offered vaccines to its staff members and inmates. So far, over 330 inmates at USP Coleman I have recovered from COVID-19, and only one has died. *COVID-19 Cases*, https://www.bop.gov/coronavirus/covid19_statistics.html (last visited April 28, 2023). USP Coleman I currently has no positive inmates or staff. *Id.*

## LEGAL STANDARD

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007). But a court can reduce a sentence for "extraordinary and compelling reasons," including a prisoner's medical condition. 18 U.S.C. § 3582(c)(1)(A)(i). For a non-terminal illness, the court must find that the prisoner has "a serious physical or medical condition . . . from which he . . . is not expected to recover" "that substantially diminishes [his] ability" to care for himself in prison. U.S.S.G. § 1B1.13 cmt. n.1(A)(ii).[1]

## DISCUSSION

### I. Compassionate Release

Mr. McFadden raises two bases for compassionate release; the Court will address each in turn.

### A. COVID-19

First, Mr. McFadden asserts that he has contracted COVID-19 and is now "deathly sick" as a result. As a threshold matter, the record does not support this assertion. Though Mr.

---

[1] On its face, U.S.S.G. § 1B1.13 governs a "motion of the Director of the Bureau of Prisons" for compassionate release. Thus, this "policy statement is not binding on prisoner-initiated motions." *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021). Still, it is highly persuasive authority that "sheds light on the meaning of extraordinary and compelling reasons." *Id.*

3

McFadden's medical records report that he contracted COVID-19 in 2020, there is no record that he has tested positive for the virus since then. Moreover, testing positive for COVID-19 does not by itself constate a "serious medical condition" warranting release. Mr. McFadden must also demonstrate that he suffers from a medical condition that renders him particularly vulnerable to serious consequences from COVID-19. *See United States v. Wiltshire*, No. 11-cr-310, 2020 WL 7263184, at *5 (E.D. Pa. Dec. 9, 2020). He has not met this burden. Not only does he not identify any particular risk factors in his motion,[2] the fact that he previously contracted COVID-19 in 2020 without serious complications suggests that the risk to Mr. McFadden from infection is minimal. *See United States v. Hilts*, No. 11-cr-133, 2020 WL 4450373, at *2 (W.D. Pa. Aug. 3, 2020). In addition, the fact that Mr. McFadden has received a COVID-19 vaccination also reduces the likelihood of serious illness, even from newer variants. *See, e.g., United States v. Gordon*, 585 F. Supp. 3d 716, 721 (E.D. Pa. 2022); *United States v. Hannigan*, No. 19-cr-373, 2022 WL 815449, at *15 (E.D. Pa. Mar. 17, 2022).

### B. Conditions of Confinement

Mr. McFadden also asserts that the COVID-19 mitigation procedures employed by the BOP, including quarantining and isolating inmates, are analogous to imposing solitary confinement on him and other inmates. But even "harsh conditions of confinement created by the coronavirus pandemic" do not constitute an extraordinary and compelling reason for compassionate release where those conditions "apply to all inmates." *United States v. Hernandez*, No. 13-cr-200, 2022 WL 910091, at *6 (E.D. Pa. Mar. 29, 2022); *see also United States v. Everett*,

---

[2] In its response, the Government notes that, while Mr. McFadden is obese, his BMI has improved since the Court's previous decision denying compassionate release. The Court agrees that Mr. McFadden's obesity does not present any more significant risk today that was present when the Court denied his first motion. Moreover, though obesity may increase the risk of severe illness from COVID-19, it "does not necessarily mean, on its own, that extraordinary and compelling reasons justify the reduction of [a] sentence." *United States v. Williams*, No. 15-cr-471-3, 2020 WL 4756743, at *5 (E.D. Pa. Aug. 17, 2020).

No. 12-cr-162, 2021 WL 322182, at *2-*3 (W.D. Pa. Feb. 1, 2021) (COVID-19 mitigation conditions did not warrant compassionate release where "[e]very prisoner in the facility and other BOP facilities is subject to [ ] similar conditions"). Because Mr. McFadden has not identified anything about the BOP's conditions that is particular to himself, they do not present an extraordinary and compelling reason for his release.[3]

## II. Home Confinement Recommendation

Mr. McFadden also requests that the Court make a judicial "recommendation" to the Attorney General and the BOP that he be transferred to home confinement under 18 U.S.C. § 3621. As that statute makes clear, the "designation of a place of imprisonment," including transfer to home confinement, is at the sole discretion of the BOP, and "is not reviewable by any court." 18 U.S.C. § 3621(b); *see also, e.g., United States v. Aguibi*, 858 F. App'x 485, 486 n.2 (3d Cir. 2021). Nonetheless, the Court has authority to issue a non-binding recommendation to the BOP. *See* 18 U.S.C. § 3621(b)(4)(B) (stating that the BOP may consider "any statement" by the sentencing court "recommending a type of penal or correctional facility"); *United States v. Kraynak*, No. 17-cr-188, 2021 WL 65990, at *2-*3 (M.D. Pa. Jan. 7, 2021).

A recommendation to the BOP, while non-binding, carries persuasive weight. Indeed, "the BOP routinely relies on judicial recommendations that express the district judge's determination of how a defendant should serve his time." *United States v. Doshi*, No. 13-cr-20349, 2020 WL 1527186, at *1 (E.D. Mich. Mar. 31, 2020). Courts must therefore be circumspect when deciding whether to "intrude upon matters committed to the discretion of the [BOP]." *United States v.*

---

[3] To the extent that Mr. McFadden argues that the BOP's mitigation efforts are so severe as to increase his punishment beyond that contemplated by the sentencing court, *see United States v. Mcrae*, 17-cr-643, 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021) (expressing the view that "a day spent in prison under extreme lockdown . . . exacts a price on a prisoner beyond that imposed by an ordinary day in prison), a motion for compassionate release is not the proper avenue. Challenges to the duration or execution of a sentence are appropriately challenged via a petition for a writ of habeas corpus under 28 U.S.C. § 2241.

*Harper*, No. 19-cr-190-7, 2021 WL 5239970, at *2 (W.D. Pa. Nov. 9, 2021). In evaluating a request for a judicial recommendation, courts consider both the facts of the defendant's underlying conviction,[4] and the reasons proffered by the defendant for the requested change to their confinement.[5]

The Court previously assessed Mr. McFadden's personal characteristics and criminal history at sentencing, and he has offered no evidence to suggest that the Court should view those factors any differently now. And as discussed above, neither the risk of COVID-19 nor the BOP's mitigation efforts, applicable to all inmates, provides a basis for this Court to issue a recommendation to the BOP that he be transferred to home confinement. The Court therefore denies this motion.

## CONCLUSION

For the foregoing reasons, the Court denies Mr. McFadden's motion for compassionate release and his motion for a judicial recommendation to be transferred to home confinement. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[4] Though not binding, the various sentencing factors set forth under 18 U.S.C. § 3553(a) may be relevant to this determination. *See, e.g., United States v. Duford*, 471 F. Supp. 3d 458, 463-64 (D.N.H. 2020) (assessing the defendant's criminal history, danger posed to the community, and personal characteristics both before and during her sentence).

[5] The standard for issuing a judicial recommendation is necessarily lower than the "extraordinary and compelling reason" required for compassionate release. Nonetheless, a court may consider similar concerns, such as health conditions, when deciding whether to issue a recommendation, even if these conditions would be insufficient to grant compassionate release. *See, e.g., Duford*, 471 F. Supp. 3d at 464.